SIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARROLL A. PEARSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-19-296-RAW-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Carroll A. Pearson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was sixty-six years old at the time of the most recent administrative hearing but was fifty-seven years old at the time of her date last insured (Tr. 129, 418). She completed the tenth grade and some Vo-Tech training, and has worked as a nurse aide (Tr. 149, 391-392). The claimant alleges inability to work since her date last insured, September 30, 2009, due to osteoporosis, high blood pressure, COPD, back and neck problems, depression, and ulcers/stomach problems (Tr. 148).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on January 28, 2011. Her application was denied. Following an administrative hearing, ALJ Doug Gabbard, II, found that the claimant was not disabled in a written opinion dated May 18, 2012 (Tr. 11-18). The Appeals Council denied review, but this Court reversed the ALJ's decision in Case No. CIV-13-254-SPS and remanded with instructions to properly consider the claimant's impairments (Tr. 966-973). On remand, ALJ Gabbard held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated December 3, 2015 (Tr. 983-996). The claimant again appealed, and the Appeals Council assumed jurisdiction and remanded the case on March 20, 2017 for resolution of issues related to impairment evidence in the case (Tr. 1004-1005). On remand, ALJ Michael Mannes held a third administrative hearing and again determined the claimant was not disabled in a written decision dated July

23, 2018 (Tr. 398-410). Within this decision, ALJ Mannes determined that the claimant had no past relevant work and that she had a high school education (Tr. 408). The claimant appealed, and on July 1, 2019 the Appeals Council adopted ALJ Mannes's findings/conclusions as to whether the claimant was disabled but determined the claimant had past relevant work as a nurse aide, although she was no longer able to return to it, and that she had a limited education (Tr. 391). Accordingly, the Appeals Council decision, which largely adopts ALJ Mannes's 2018 written opinion with the exceptions heretofore described, represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The Appeals Council, in adopting ALJ Mannes's opinion, made its decision at step five of the sequential evaluation. ALJ Mannes found that the claimant had the ability to perform medium work as defined in 20 C.F.R. § 404.1567(c), with occasional climbing ramps/stairs, stooping, kneeling, and crouching; no climbing ladders/ropes/scaffolds or crawling; and frequent balancing. Additionally, he found that she must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants, and that her time off task could be accommodated by normal work breaks (Tr. 404). The Appeals Council found that even though the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, sandwich maker, machine packager, and lab equipment cleaner (Tr. 392).

Review

The claimant contends that the ALJ erred by failing to make a function by function assessment of her RFC, including findings related to standing, walking, lifting, carrying, pushing, and pulling. This contention lacks merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ, affirmed by the Appeals Council, found the claimant had the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spine, as well as asthma, emphysema, and chronic bronchitis (Tr. 401). The ALJ further found the claimant's osteoporosis, high blood pressure, COPD, back and neck problems, depression, and ulcers/stomach problems to be nonsevere (Tr. 401). The medical evidence relevant to this appeal reflect hospital treatment notes from 2008 through 2009 indicating chronic back pain (largely consisting of pain/medication management) that was diagnosed in 2006 (Tr. 219, 245-266, 329-386). Additionally, treatment notes from the Choctaw Nation Indian Health Clinic in Stigler, Oklahoma, reflect a normal gait, strength, and tone during the relevant time even with complaints of hip and back pain (Tr. 254, 349).

Dr. Thomas H. Conklin, Jr., D.O., began treating the claimant in 2003. His notes reflect regular and continued treatment for chronic neck and back pain with associated pain management (Tr. 237-243, 321-328). Additionally, his notes reflect that she was a long-time smoker. In the twelve times he saw her between April 28, 2009 and December 28, 2009, almost every time he noted some breathing-related difficulties, *i. e.*, cough, deep harsh cough, congestion, deep harsh bronchitic type cough, chronic bronchitis, etc. (Tr. 240-243). Additionally, MRIs performed on August 24, 2011 revealed advanced

degenerative disk disease and spondylosis with bilateral neuroforaminal narrowing at C5-6, mild multilevel degenerative thoracic spondylosis, and degenerative disc disease at L4-5 and L5-S1 (Tr. 305, 381-386).

There was no record of consultative exams for this claimant. Additionally, state reviewing physicians found there was insufficient evidence to support finding mental or physical impairments (Tr. 267-296).

At the original administrative hearing, which was closest in time to the claimant's date last insured, the claimant testified that her back pain started in 2006, that her back pain hurt worse than her neck pain, and that she can no longer work in her yard, ride a motorcycle, or sit or stand very long as a result of this impairment, and that the heaviest thing she can lift is a gallon of milk (Tr. 35, 37-38). She testified that she takes pain medication on a regular basis to manage this (Tr. 36). Although she had MRIs done in 2011, she stated that she did not know why testing had not been done earlier and that the 2011 MRIs revealed advanced degenerative bone disease (Tr. 39). She further stated that she cannot walk longer than five minutes without becoming out of breath, that she has been diagnosed with COPD and emphysema, and that she had been unsuccessful at quitting smoking despite previous efforts (Tr. 36, 42-43).

In his written opinion at step four, ALJ Mannes discussed the claimant's hearing testimony, as well as the evidence in the record that that applied to her September 30, 2009 date last insured (correctly noting that much of the evidence of record was years past her date last insured). He also discussed the claimant's treatment with Dr. Conklin, and the MRIs from 2011, as well as the medication administered for her chronic pain and her

chronic respiratory complaints (Tr. 405-406). Furthermore, he recognized that she sometimes exhibited abnormal musculoskeletal findings including mild tenderness, but that she had no deficits in range of motion through the date last insured (Tr. 406). The ALJ further noted that the claimant was still able to work in 2008 without a lot of discomfort, and that she consistently stated she continued to function normally during the relevant time (Tr. 406-407). He thus found the claimant's testimony at the administrative hearings to be inconsistent with the medical evidence of record (Tr. 407). In discussing previous opinions, the ALJ agreed with this Court's previous opinion that the claimant had severe impairments, and further agreed with a previous Appeals Council opinion finding she had environmental limitations as a result (Tr. 407). He then stated that the evidence supported a finding she could perform medium work in light of "no limitations in range of motion[,] cranial nerves were intact, her strength was 5/5, her sensory examination was normal, her gait was normal, her deep tendon reflexes were normal, her strength and tone were normal, and she had no swelling or edema in her extremities" (Tr. 407). However, he assessed postural limitations based on the chronic low back and neck pain, including occasional stooping, kneeling, crouching, and climbing ramps/stairs, and no crawling (Tr. 408).

The claimant asserts that the ALJ erred in assessing her RFC. As part of that argument, she contends that the ALJ failed to perform the function by function assessment required by Soc. Sec. Reg. 96-8p, 1996 WL 374184, at *3 (July 2, 1996), in terms of standing, walking, lifting/carrying, and pushing/pulling. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis.

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ specifically found that the claimant could perform "'medium' work as defined in 20 C.F.R. § 404.1567(c)," with the aforementioned additional postural limitations, but the claimant complains that the ALJ did not specifically enunciate the sit/stand/walk and lift/carry/push/pull limitations.

The regulatory definition states that medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Furthermore, social security regulations state that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which requires precision use of the fingers as well as use of the hands and arms." Soc. Sec. Reg. 83-10, 1983 WL 31251,

at *6 (Jan. 1, 1983). Accordingly, the undersigned Magistrate Judge finds the ALJ, and by extension the Appeals Council, performed the proper assessment.

It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). But here, the ALJ's treatment of the medical evidence in this case meets this standard. The ALJ provided a narrative discussion of the evidence, including the claimant's daily living and functioning, and the medical opinions in the record, and the undersigned Magistrate Judge could follow the ALJ's reasoning and understood what the limitation to medium work entailed. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) ("Ms. Hendron asserts that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting. We disagree."). The claimant's assertion of this technical error, without more, is insufficient to warrant remand. The undersigned Magistrate Judge thus finds no reversible error in the ALJ's RFC assessment in this case. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

As part of this argument, the claimant also argues that the ALJ should have ordered additional consultative evaluations of the claimant. It is true that a social security disability

hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993) (*citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). But the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* [citation omitted]. Here, the claimant has not met her burden, and there is nothing in this case pertaining to the relevant time period to indicate further evaluation was necessary.

The undersigned Magistrate Judge finds that the ALJ specifically noted the various relevant findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record *and still concluded* that she could perform medium work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the

evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**